IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:25-cr-133 |
| v. | ) | |
| MARTIN JAMES TIRRELL, | ) | GOVERNMENT'S SENTENCING MEMORANDUM |
| Defendant. | ) | |

## INTRODUCTION

In early 2021, Defendant Martin James Tirrell was sentenced by this Court for defrauding investors in a sports ticket scam spanning ten-plus years. He was released from federal prison in early 2023.

Defendant's time in federal prison did not reform him.

By early 2024 and continuing through January 2025—all while on federal supervised release—Tirrell executed a scheme to defraud individuals in another "ticket flipping" investment scam. Tirrell promised investor victims that he would use their money to purchase tickets to high-demand concerts and sporting events, resell them, and return the investors their principal and profit. But Tirrell did not use their money as promised. Instead, he used it to pay off high-interest loans, pay personal living expenses, gamble, and make lulling payments to prior investors masquerading as a return on their investment. In short, Tirrell ran a Ponzi scheme. This time Tirrell received at least $7.5 million from his victims for "investment." The victims have a combined loss exceeding $2 million.

Tirrell's Ponzi scheme was calculated, carefully executed, sophisticated, and targeted. He carefully cycled money among his investors to allay suspicions. He meticulously wrote memo lines on checks and wire transactions referencing prior deals to give the investors the false impression that the money Tirrell was returning was from a successful deal. He carefully developed and re-established relationships with his victims before fleecing them.

When federal law enforcement closed in on Tirrell in the summer of 2025, he did not own his actions. Instead, Tirrell lied to the FBI. A jury convicted Tirrell of 11 counts of wire fraud at trial.

This Court should sentence Tirrell to 97 months in prison and order Tirrell to pay restitution.

## SENTENCING CALCULATION & OBJECTIONS

### A. Guidelines Calculation & Disputes

The probation office has calculated the guidelines as:

| | |
|---|---|
| Base Offense Level (USSG §2B1.1(a)(1)) | +7 |
| Loss Greater than $1.5 million (§2B1.1(b)(1)(I)) | 16 |
| Sophisticated Means (§2B1.1(b)(10)(C)) | +2 |
| Vulnerable Victim (§3A1.1(b)(1)) | +2 |
| Total Offense Level | 27 |
| Criminal History Category | II |
| Advisory Guidelines Range | 78 to 97 months |

The United States agrees with this calculation. Tirrell disagrees and contends: the loss amount is between $550,000 and $1.5 million (+14) and that neither of the two-level enhancements apply. Tirrell argues that the total offense level is 21 with a criminal history category II, resulting in a 41–51-month advisory range.

There are no factual disputes for the Court to decide. The only significant issues for the Court are the guidelines issues and the appropriate sentence. The Court can consider any evidence presented at trial or in the presentence report when resolving the contested issues.

**B. <u>The loss amount calculated in the presentence report is supported by the evidence.</u>**

The question of how much pecuniary harm Tirrell's fraud caused the victims should be answered with a "reasonable estimate" based upon a preponderance of the evidence. *United States v. Ruzicka*, 988 F.3d 997, 1011 (8th Cir. 2021) ("keep[] in mind that the district court does not have to make a precise determination of the loss, only a reasonable estimate.") (cleaned up); *United States v. Engelmann*, 720 F.3d 1005, 1013 (8th Cir. 2013) ("Because the damage wrought by fraud is sometimes difficult to calculate, a district court is charged only with reasonably estimating the loss using a preponderance of the evidence standard.") (cleaned up). A "sentencing court is not an auditing firm expected to conduct an exhaustive inquiry and precise calculation of the amount of loss." *United States v. Qingyou Han*, 479 F.Supp.3d 783, 786 (N.D. Ind. 2020). "The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." USSG §2B1.1(b)(1), comment. (n.3(B)).

The methodology and calculations set forth in the PSR regarding loss applicable to victims R.B., G.C., and M.A. are logical, articulable, and reasonable. The government endorses the methodology and figures. Tirrell does not object to the

loss involving M.A ($518,500). He objects to the loss figures for R.B. ($1,346,751.80) and G.C. ($186,690.92). Starting with G.C., the trial made clear that the most reliable source for G.C.'s loss was the ticket transaction ledger contemporaneously prepared and maintained by G.C.'s accountant. *See* Govt. Trial Exhibit 61; PSR ¶ 29. The loss amount for G.C. is $186,690.92. Regarding R.B., Tirrell's proposed methodology and calculation is flawed. *See* PSR Addendum p.2. Moreover, the $1.346 million loss figure is likely very conservative. When interviewed by the FBI, R.B. estimated Tirrell owed him $2.5 million relating to ticket deals (PSR ¶ 21), though it is unclear whether that estimate included profits owed. R.B., however, sent contemporaneous text messages during the scheme in which he estimated (as of November 18, 2024) that Tirrell owed him over $1.4 million on ticket deals for principal, excluding expected profits. *See* PSR ¶ 23; Govt. Trial Exhibit (GTX) 52 *resubmitted* as Govt. Sentencing Exhibit 1 ("1.4 million is owed just to me not counting Super Bowl or playoffs." and "The 1.4 doesn't count any profits."). In short, even the $1.4 million baseline—from which the adjustments for transactions after November 18 are made—appears to be a conservative estimate. The Court should find that R.B.'s loss is $1,346,751.80.

The Court should find that the total loss attributable to Tirrell is $2,051,942.72.

C. **<u>Tirrell's offense involved especially complex and especially intricate conduct. The Court should apply the two-level enhancement for sophisticated means.</u>**

If the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means" a two-level increase must be applied. USSG § 2B1.1(b)(10)(C). The commentary note provides that "sophisticated means" means "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG §2B1.1, comment. (n.9(B)).

Tirrell was able to perpetrate his Ponzi scheme for a year because he was meticulous and intricate when lulling his victims. He carefully cycled the victims' own monies between them to conceal his scheme and facilitate additional "investment" by the victims. *See United States v. Bistrup*, 449 F.3d 873, 883 (8th Cir. 2006) (noting lulling or "Ponzi-type" payments support application of enhancement). He meticulously—and purposefully—noted prior ticket deals on his lulling checks and wires to the investors and sent at least one investor an obscured image of a check from another investor, claiming it was proceeds from the investment. *See, e.g.*, GTX 50, 60, 71 at 11; *see also United States v. Meadows*, 866 F.3d 913, 918 (8th Cir. 2017) (noting the use of "false documents" support application of enhancement). He was intricate in his other communications with his victims, including sending carefully timed and worded text messages to R.B. and M.A. to allay their suspicions and facilitate additional investment. *See, e.g.*, GTX 51, 71; *see also Bistrup*, 449 F.3d at 883 (noting repeated lies to victims supports application of enhancement).

Tirrell's offense was both especially complex and especially intricate. The Court should apply the two-level enhancement.

**D. <u>Tirrell knew or should have known that at least one victim of the offense was a "vulnerable victim." The Court should apply the two-level enhancement for vulnerable victim.</u>**

"If the defendant knew or should have known that a victim of the offense was a vulnerable victim" a two-level enhancement applies. USSG §3A1.1(b)(1). A "vulnerable victim" means "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG §3A1.1, comment. (n.2).

The Court need only determine that a single victim is a vulnerable victim for the application of this enhancement. To apply this enhancement "requires a fact-based explanation as to why advanced age or some other characteristic made one or more victims 'unusually vulnerable' to the offense conduct, and why the defendant knew or should have known of this unusual vulnerability." *United States v. Fiorito*, 640 F.3d 388, 350-51 (8th Cir. 2011). Because the district court is best suited to make the factual determinations in this regard, it is reviewed for clear error. *United States v. Anderson*, 440 F.3d 1013, 1017-18 (8th Cir. 2006).

The Court cannot make a "blanket assumption that an advanced age is sufficient to render a victim vulnerable." *Id.* at 1018. However, the Court should consider age and the countless other factors that contribute (alone or in combination)

to whether a particular victim is "otherwise particularly susceptible" to the crime. This is a totality of the circumstances approach. *See, e.g.*, *United States v. Beyer*, 878 F.3d 610 (8th Cir. 2017) (a combination of factors together warranted application of the enhancement and citing several examples from other cases).

G.C. was particularly susceptible to Tirrell's crime. G.C. was in his early 80s when Tirrell re-established and carefully fostered a close relationship with G.C. and began to defraud him. G.C.—albeit a business owner—suffered from diminishing memory and mental acuity due to his advancing age. Tirrell certainly knew these traits. The testimony of G.C. and his accountant support that G.C. was particularly susceptible to Tirrell's crimes. G.C. could not recall much regarding his ticket agreements with Tirrell. His accountant recognized that G.C. would not be able to track and recall the deals, so the accountant maintained a ledger. PSR ¶ 31. The Court observed the trial testimony. The Court should find that G.C. was unusually vulnerable to the offense conduct, and that Tirrell knew or should have known of this unusual vulnerability.

**RESTITUTION**

The provisions of the Mandatory Victim Restitution Act apply to Tirrell's offense. To date, only M.A. has provided a victim impact statement with restitution request. (Govt. Sentencing Exhibit 2.) It was previously provided to the Probation Office and defense.

The government asks that the Court order restitution totaling $2,046,942.72. *See* PSR ¶ 51 (reducing M.A. restitution by $5,000 per his request). Accordingly, the Court should order restitution as follows:

- $513,500 (Victim M.A.)
- $186,690.92 (Victim G.C.)
- $1,346,751.80 (Victim R.B.)

Notably, this Court ordered Tirrell to pay restitution in the amount of $1,462,829.55 in his prior federal case (4:19-cr-005). PSR ¶ 68. Currently $1,369,938.38 in restitution remains to be paid on that case. Tirrell used some of the victims' monies in the instant offense to pay restitution in his prior case. *See* GTX 103 ($12,000 to U.S. District Court).

**THE § 3553(a) FACTORS SUPPORT A 97-MONTH SENTENCE**

Tirrell is a textbook recidivist. Despite his prior fraud conviction in this Court—and serving a few years in federal prison—he orchestrated a similar fraud scheme while on federal supervised release.

Tirrell's offense is serious. It spanned a year. He took over $7.5 million from three investor victims and still owes over $2 million. To keep his fraud afloat, Tirrell carefully lulled, manipulated, and lied to his victims continuously. He lied to and stole from people that gave him a helping hand after his release from federal prison. Tirrell's criminal scheme was calculated and sophisticated.

Moreover, Tirrell lied to law enforcement when confronted. And he ran his Ponzi scheme while on supervised release, barely a year removed from federal prison.

His conduct violated numerous conditions of his supervision, including committing criminal offenses, gambling, and obtaining loans. Yet he flagrantly hid his conduct from the U.S. Probation Office.

## CONCLUSION

A significant sentence is necessary to achieve the goals of the sentencing statute. The United States recommends 97 months in prison. A 97-month term of imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of Tirrell's crimes, to provide Tirrell with just punishment, to protect the public from further crimes of Tirrell, and to afford adequate deterrence to criminal conduct.

Respectfully submitted,

David C. Waterman
United States Attorney

By: */s/Adam J. Kerndt*

Adam J. Kerndt
Joseph H. Lubben
Assistant United States Attorneys
Neal Smith Federal Building
210 Walnut Street, Suite 455
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: Adam.Kerndt@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2026, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:

____U.S. Mail ______ Fax ______Hand Delivery

_X__ECF/Electronic filing _X__Other means (Email)

UNITED STATES ATTORNEY
By: */s/Madison Lancaster, Supervisory Paralegal*